108 T.C. No. 23

UNITED STATES TAX COURT

GOLDEN BELT TELEPHONE ASSOCIATION, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21677-95.                    Filed June 16, 1997.

P is a rural telephone cooperative corporation
that operates at cost.  In addition to local telephone
service it provides its members with long-distance
service through connection with long-distance or
interstate (interexchange) carriers.  P performs so-
called "billing and collection" (B & C) services in
respect of calls placed through such carriers.  The
B & C services consist of recording data with respect
to members' long-distance calls, such as date, time,
destination, and duration of each call, answering and
resolving questions of members relating to their long-
distance bills, etc., and sending a single monthly
telephone bill to each member including charges for
both local and long-distance calls.  Upon collection of
such charges it remits to the interexchange carrier an
appropriate portion of the amount paid for long-
distance calls.  By retaining the remainder it is thus
compensated by the long-distance carrier for providing
B & C services.

_Held_, the income thus received from the long-distance carriers for B & C services is income for the performance of "communication services" within sec. 501(c)(12)(B)(i), and is therefore not taken into account to comply with the "85 percent or more" requirement of sec. 501(c)(12)(A). Accordingly, since P is otherwise exempt from taxation under sec. 501(a), it does not lose that exempt status.

Raymond P. Wexler, Todd F. Maynes, James M. Caplinger, and Mark E. Caplinger, for petitioner.

Robin W. Denick, Elizabeth Purcell, and Robert M. Fowler, for respondent.


OPINION

RAUM, _Judge_: The Commissioner determined deficiencies of $170,686, $164,484, and $90,241 in petitioner's Federal income taxes for 1991, 1992, and 1993, respectively. Petitioner, Golden Belt Telephone Association, Inc., has filed a Motion for Summary Judgment. The facts are not in dispute; the Government "does not take issue with petitioner's statement of Uncontested Facts" set forth in petitioner's motion, and adopted those facts in its own "Motion for Partial Summary Judgment". Nor has the Government disputed any facts stated in the "Preliminary Statement" of petitioner's motion. At issue is whether income received by a local telephone cooperative allocable to billing and collection services performed in respect of long-distance calls qualifies as income received for the performance of "communication services"

under section 501(c)(12)(B)(i),[1] thus resulting in petitioner's

classification as an exempt corporation under section 501(a).[2]

Petitioner is a Kansas rural telephone cooperative

corporation. It was formed in January 1953 to provide

telecommunication services to its members.

During 1991, 1992, and 1993, petitioner operated on a

cooperative basis to provide exchange and interexchange

telecommunications service to residences and businesses in its

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.

[2] Sec. 501 provides:

(a) Exemption From Taxation.--An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle * * *

* * * * * * *

(c) List of Exempt Organizations.--The following organizations are referred to in subsection (a):

* * * * * * *

(12)(A) * * * mutual or cooperative telephone companies * * * but only if 85 percent or more of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses.

(B) In the case of a mutual or cooperative telephone company subparagraph (A) shall be applied without taking into account any income received or accrued--

(i) from a nonmember telephone company, for the performance of communication services which involve members of the mutual or cooperative telephone company,

certified areas granted by the State Corporation Commission of Kansas (KCC). As a cooperative corporation, petitioner operates at cost by allocating to its members any net margins in the form of capital credits each year. During the taxable years, petitioner provided telephone service to approximately 3,500 members, who were located across approximately 2,300 square miles of central and western Kansas.

The billing and collection services (B & C services) consist of the following:

a. <u>Recording</u>. Petitioner records data with respect to members' long-distance calls, such as the date and time when the call is made, the destination of the call, and the duration of the call.

b. <u>Billing and Collection</u>. Petitioner sends a single monthly telephone bill to each member that includes charges for both local and long-distance calls. Upon collection of such charges, it remits to the interexchange carrier an appropriate portion of the amount paid for long-distance calls. In the event that one of petitioner's members fails to make payment on its long-distance telephone bill, petitioner is permitted to disconnect the telephone service of the nonpaying member under rules of the KCC.

c. <u>Inquiry</u>. Petitioner answers inquiries from its members with respect to long-distance calls, and resolves questions and concerns regarding their long-distance telephone bills, calls, and services.

Petitioner has performed B & C services since it was formed in 1953. Prior to the divestiture of AT&T in 1984, petitioner did not separately account for the costs attributable to B & C services. Rather, these costs were included in a single aggregate account with all of petitioner's costs of providing telephone service to its members. Petitioner was then compensated by the long-distance carrier for all such costs by retaining an appropriate portion of the toll rates paid by petitioner's members for long-distance calls.

As a result of the divestiture, the Federal Communications Commission (FCC) revised the accounting requirements for telephone cooperatives. Under the new system, billing and collection revenues were required to be reported separately from other income sources. Petitioner's operating methods and sources of revenue remained the same.

Under section 501(c)(12), a cooperative telephone company qualifies as a tax-exempt entity if at least "85 percent * * * of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses." In determining whether a telephone cooperative has satisfied the 85-percent test, section 501(c)(12)(B) provides that income received "from a nonmember telephone company, for the performance of communication services which involve members" of the cooperative shall not be taken into account. At issue here is whether B & C services are "communication services" within section 501(c)(12)(B). If so,

the amount of petitioner's gross income would without dispute satisfy the 85-percent test for each of the years involved, and petitioner is qualified as a tax-exempt entity.  As a result, petitioner would be entitled to summary judgment with respect to the deficiencies determined by the Commissioner.  The deficiency notice contains a number of adjustments, all of which would become irrelevant if petitioner were held to be a tax-exempt corporation.

## 1.  History

"Communication services" is not defined in the Code or the Regulations.  However, the history of the treatment of telephone cooperatives gives some insight into whether "communication services" include B & C services.

In Rev. Rul. 74-362, 1974-2 C.B. 170, 171, the IRS ruled that amounts due a cooperative telephone company for services rendered to a nonmember long-distance company must be treated as nonmember income under the 85-percent test.  Section 501(c)(12) provided, as it does now, that a mutual or cooperative telephone company was tax exempt "only if 85 percent or more of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses."  As a result of the ruling, most telephone cooperatives stood to lose their tax-exempt status.

In response, Congress added subparagraph B to section 501(c)(12).  In the legislative history of section 501(c)(12)(B),

the change is explained by the Senate Finance Committee as follows:

> The committee believes that the performance by a telephone cooperative of call-completion services involving calls to or from members of the cooperative is substantially related to the cooperative's performance of its statutory exempt function, and hence that actual or constructive "payments" from another telephone company for such services should not disqualify otherwise eligible telephone cooperatives from tax-exempt status.

> The committee understands that the approach set forth in the Service's ruling, described above, might well make the statutory exemption provision into a "dead letter," since few, if any, telephone cooperatives could prove that the constructive "payments" hypothesized by the Service do not cause the telephone cooperative to fail the 85-percent member-income test.

S. Rept. 95-762 (1978) at 2-3, 1978-2 C.B. 357, 358.  Prior to the 1984 AT&T divestiture, "call-completion services" included B & C services.[3]

In 1986, the FCC issued a decision, <u>In the Matter of Detariffing of Billing & Collection Servs.</u>, 102 FCC2d 1150 (1986) (1986 Detariffing Order), which resulted in the detariffing of B & C services under Title II of the Communications Act of 1934, ch. 652, tit. I, sec. 1, 48 Stat. 1064, 47 U.S.C. sec. 151 et seq. (1937).  In the 1986 Detariffing Order, the FCC concluded that B & C services performed for a non-member long-distance company were not a "communication service", but were instead a

---

[3]  There is no explanation for the use of the term "communication services" rather than "call-completion services" in sec. 501(c)(12)(B).

"financial and administrative service." <u>In the Matter of
Detariffing of Billing & Collection Servs.</u>, 102 FCC2d at 1168.
Therefore, the FCC would not regulate B & C services under Title
II of the Communications Act. <u>Id.</u> at 1169.

In reliance upon the 1986 Detariffing Order, the IRS ruled
in Tech. Adv. Mem. 91-11-001 (Apr. 23, 1989) (the TAM), that    B
& C services were not "communication services" for purposes of
section 501(c)(12)(B). The issue in the TAM was whether an
exempt telephone cooperative's revenues, including B & C
revenues, should be treated as member income, nonmember income,
or excludable income under section 501(c)(12)(B). <u>Id.</u> The TAM
chronicled the treatment B & C services had received from the FCC
since the divestiture of AT&T in 1984. At first, the FCC
regulated the rate of return for B & C services that local
cooperatives offered to long-distance carriers. However, in a
1985 Detariffing Notice, the FCC

> tentatively concluded that third-party billing and
> collection was "essentially a financial and
> administrative service," not "inherently a
> communications service" and accordingly proposed to
> "detariff" billing and collection provided to third
> parties. * * *

<u>Id.</u> In 1986, the FCC cemented its conclusion of 1985 and
determined that B & C services were not "inherently a
communications service" under Title II of the Communications Act.
<u>Id.</u> The FCC also required separate accounts for B & C revenues.
<u>Id.</u>

Based on the 1985 Detariffing Notice, the 1986 Detariffing Order, and the changed accounting system, the TAM concluded

> that the billing and collection function is a "financial and administrative service." The functions comprising billing and collection (data processing, creating, mailing and collecting invoices), are common accounting functions, not unique to the telephone industry. * * * A "financial and administrative service" which credit card companies can perform as ably as LECs [local exchange carriers], cannot be a "communication service involving the completion of long distance calls." Treas. Reg. sec. 1.501(c)(12)-1(c). * * * [Fn. ref. omitted.]

Id. Because the IRS concluded in the TAM that telephone cooperatives provide B & C services in the same manner as other nonexempt organizations, it ruled that B & C income is unrelated trade or business income of the cooperative. Id. Recognizing that the TAM "may have caused the inadvertent disqualification of many telephone companies from tax exempt status", the IRS, in Notice 92-33, 1992-2 C.B. 363, indicated that it would apply the new provisions of the TAM for tax years beginning after December 31, 1990. Thus, the IRS seeks to apply the TAM for the years at issue here, namely, 1991, 1992, and 1993.

Meanwhile, in 1989, the FCC issued another decision, In the Matter of Pub. Serv. Commn. of Md., 4 FCC Rcd 4000 (1989) (1989 FCC Decision), in which it softened the position it had taken in the 1986 Detariffing Order. The decision stated:

> Billing and collection services of the kind provided by C&P for AT&T directly affect the conditions under which interstate carriers offer transmission services. The rates that LECs [local exchange carriers] charge for billing and collection directly affect the costs of providing interstate transmission

service and hence the rates that IXCs [interexchange or long-distance carriers] must charge their interstate customers.  Moreover, * * * DNP [disconnection for nonpayment] is integral to the billing and collection service that C&P provides to interstate carriers. * * *

Finally, * * * AT&T must rely on the LECs to perform recording of call detail information * * *. * * * IXCs cannot, as a practical matter, offer interstate telephone service without obtaining recorded call detail information sufficient to collect payment from customers * * * .

Besides "affecting" interstate communications, the billing and collection service that C&P provides for AT&T are also "closely related to the provision of [such] services," since billing and collection must occur accurately and efficiently for an interstate carrier to offer its services on an economically sound basis.  From a technical perspective, DNP and the call detail recording function are two integral components of the billing and collection services that C&P provides to interstate carriers that are closely related to the interstate communication services of those carriers.  DNP and recording are each performed as a function of the LECs' provision of interstate communications service * * * that other, non-carrier vendors of billing and collection services cannot provide.

* * * When one interstate carrier is performing billing and collection for the interstate services of another interstate carrier under circumstances like those involved in C&P's relationship with AT&T the billing and collection service is incidental to interstate communications and subject to our Title I jurisdiction.  [Fn. ref. omitted; emphasis supplied.]

4 FCC Rcd at 4005.

Finally, in 1992, the FCC formally reversed the position it had taken in the 1986 Detariffing Order.  In In the Matter of Policies and Rule Concerning Local Exchange Carrier Validation and Billing Information for Joint Use Calling Cards, 7 FCC Rcd 3528 (1992) (1992 FCC Decision), the FCC stated affirmatively

that B & C services are "communication services." The FCC

explained the change as follows:

> We recognize that in the Billing and Collection
> Detariffing Order, the Commission found that LEC
> billing and collection for an unaffiliated IXC is "not
> a communication service for purposes of Title II of the
> Communications Act," but rather, "is a financial and
> administrative service." * * * Nevertheless, in
> recognizing its Title I ancillary jurisdiction over
> billing and collection services, the Commission found
> that such services were "incidental" to the
> transmission of wire communications and thus fell
> within the meaning of "wire communication" as defined
> in Section 3(a) of the Act. * * * These two findings
> appear inconsistent. Upon further analysis, we believe
> that the latter conclusion, that billing and collection
> is incidental to the transmission of wire communication
> and thus is properly considered a communications
> service under Section 3(a) of the Act, is the correct
> one. Billing and collection, of course, remains
> outside the scope of Title II because it is not a
> common carrier service. * * * [Emphasis supplied.]

7 FCC Rcd at 3533 n. 50.

The Tenth Circuit, which includes Kansas, has acknowledged

the 1992 FCC Decision. In Mical Communications, Inc. v. Spring

Telemedia, Inc., 1 F.3d 1031, 1039 (10th Cir. 1993), the court

stated that the FCC "appeared in that order, however, to retreat

from its characterization of billing and collection by LECs as

merely a 'financial and administrative' service."

2. Analysis

In 1934, Congress created the Federal Communications

Commission

> For the purpose of regulating interstate and foreign
> commerce in communication by wire and radio so as to
> make available, so far as possible, to all the people
> of the United States a rapid, efficient, Nation-wide,
> and world-wide wire and radio communication service

* * *.

47 U.S.C. sec. 151 (1991).  Included in the FCC's jurisdiction is

"telephone exchange service", defined as

> service within a telephone exchange, or within a
> connected system of telephone exchanges within the same
> exchange area operated to furnish to subscribers
> intercommunicating service of the character ordinarily
> furnished by a single exchange * * *.

47 U.S.C. sec. 153(47) (1996).

The phrase "communication service" is not defined in the

Communications Act, but it is used in the paragraphs describing

the purpose of the FCC and the definition of "telephone exchange

service".  It is also used in Title II of the Communications Act,

which describes common carriers.  Section 201(a) of 47 U.S.C.

makes it

> the duty of every common carrier engaged in interstate
> or foreign communication by wire or radio to furnish
> such <u>communication service</u> upon reasonable request
> therefor * * *   [Emphasis supplied.]

47 U.S.C. sec. 201(a) (1991).  Section 201(b) provides that:

> All charges, practices, classifications, and
> regulations for and in connection with such
> <u>communication service</u>, shall be just and reasonable
> * * *   [Emphasis supplied.]

47 U.S.C. sec. 201(b) (1991).

When Congress enacted the current Code section 501(c)(12),

it incorporated the term "communication services" into the

statute.  Although there is nothing explicitly linking the

definition in section 501(c)(12) to the Communications Act or the

FCC, the FCC has defined what is a communication service, at

least in terms of B & C services, for over a decade without any Congressional action. In addition, the IRS itself relied heavily on the FCC 1986 Detariffing Order to craft its position. In Tech. Adv. Mem. 91-11-001, the FCC is the sole authority for the IRS' position that B & C services are not communication services. Id.

In 1992, the FCC stated unequivocally that B & C services are "properly considered a communication service". In the Matter of Policies and Rule Concerning Local Exchange Carrier Validation and Billing Information for Joint Use Calling Cards, 7 FCC Rcd 3528, 3533 n.50 (1992). The Government's only direct authority for its contrary position in Tech. Adv. Mem. 91-11-001 was the FCC's 1986 Detariffing Order. In 1992 the FCC acknowledged that its prior position was incorrect. There is no authority in conflict with the latter FCC position. To be sure, we are called upon here to interpret the Internal Revenue Code, not some other statute. Nevertheless, in the context of the matter before us, there is nothing to indicate that the definition of "communication services" in section 501(c)(12) should be treated differently from "communication services" in the Communications Act. We hold that "communication services" in section 501(c)(12)(B) includes B & C services.

The Government relies upon the TAM[4] and contends that it is not bound by the subsequent FCC rulings. In the first place, a TAM is generally merely a "Letter Ruling" given to a specific taxpayer based upon facts relating to that taxpayer. It is not a ruling of general application. In <u>Watts Copy Sys., Inc. v. Commissioner</u>, T.C. Memo. 1994-124, the Court stated that "We recognize that technical advice memoranda are not precedent." Indeed, section 6110(j)(3) provides "Unless the Secretary otherwise establishes by regulations, a written determination may not be used or cited as precedent." Moreover, unlike a revenue ruling, a TAM is not published in the Cumulative Bulletin. It certainly stands on an even weaker footing than a revenue ruling,[5] which itself does not have the authority of a Treasury regulation promulgated pursuant to section 7805.

While it is true that the IRS need not follow decisions of other agencies, the TAM's heavy reliance on the 1986 Detariffing Order undermines the "authority" the IRS purports to give the TAM. Since the TAM relied on the 1986 Detariffing Order holding that B & C services were mainly a "financial and administrative service", the FCC's change of position upon more mature

---

[4] We note that the IRS has very recently issued another technical advice memorandum, Tech. Adv. Memo. 97-22-006 (May 30, 1997), relating to the factual situation of a different taxpayer, which would appear to muddy the waters further.

[5] However, the TAM involved herein may arguably be treated as attaining a status equivalent to a revenue ruling by reason of reference thereto in Notice 92-33, 1992-2 C.B. 363. See <u>supra</u> p. 9.

reflection in the light of experience that B & C services are "communication services" should be accorded weighty consideration, particularly in view of the FCC's expertise in this field.

The Government also contends that billing and collection "lacks any true connection to the act of completing long distance calls and remains a service that many companies, not just telephone cooperatives, could perform for nonmember telephone companies."  The point is without merit.  It erroneously assumes that billing and collection  consists merely of sending out a bill and depositing a check.  Although the Government is correct that any company could perform such limited services, there are certain services included within B & C services that only the cooperative can perform.

Unlike an outside entity, only local telephone cooperatives can record the time, duration, and destination of a call.  Local cooperatives also can disconnect service for nonpayment. Further, local cooperatives handle customer inquiries about a range of matters relating to a customer's bill--a function that cannot be performed by an outside entity. Thus, only the cooperative can verify the accuracy of the bill first-hand.  See 1989 FCC Decision, 4 FCC Rcd at 4005 n.76.

Based on the history of telephone cooperatives, the treatment of B & C services by the FCC as a "communication service", and the breadth of B & C services, B & C services

should, in our judgment, be included as "communication services" under section 501(c)(12).  Accordingly, the income attributable to such services should not be included in the 85-percent test.  As a consequence, more than 85 percent of petitioner's gross income comes from member sources, and it therefore qualifies as a tax-exempt entity.

<u>Petitioner's motion for summary judgment will be granted, and decision will be entered for petitioner.  Respondent's motion for partial summary judgment will be denied</u>.